(Nos. 23377, 23426.—

THE CHICAGO PARK DISTRICT, Appellee, *vs.* WILBUR LATTIPEE, Appellant.—(CLARENCE GODDARD *et al.* Appellants, *vs.* THE CHICAGO PARK DISTRICT *et al.* Appellees.)

*Opinion filed June 10, 1936—Rehearing denied October 13, 1936.*

ELLIS & WESTBROOKS, JOSEPH E. CLAYTON, JR., and
EDWARD M. BYRD, (RICHARD E. WESTBROOKS, of counsel,)
for appellants.

JAMES M. SLATTERY, (PHILIP A. LOZOWICK, of coun-
sel,) for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

In cause 23377 Wilbur Lattipee was convicted in the
municipal court of Chicago for violating section 7b of
chapter 10 of an ordinance of the Chicago Park District,
which provides that no person shall solicit passengers for
hire in the park system. A direct appeal was allowed be-
cause the validity of the ordinance is involved.

In cause 23426 Clarence Goddard *et al.* filed a com-
plaint in chancery for an injunction in the superior court
of Cook county to restrain the enforcement of the above
mentioned ordinance provision and also section 55a of chap-
ter 8 of said ordinance, which provides that it shall be un-
lawful for the operator of any public vehicle to solicit pas-
sengers in the park system. A temporary injunction was

granted. The cause was set down for final hearing, and on motion of the defendant the cause was dismissed and an appeal to this court was perfected. The causes were consolidated in this court upon motion of appellants.

The contentions of appellants which are common to both cases are, that the Chicago Park District was without power to enact said ordinance; that the ordinance is invalid because the word "solicit" is not sufficiently defined so that persons may know what is prohibited; that the Chicago Park District is not within the territorial jurisdiction of the city of Chicago, and therefore the municipal court of Chicago has no jurisdiction over prosecutions for the violation of a park district ordinance, and that the enforcement of said ordinance as attempted by the district has been discriminatory and in violation of section 22 of article 4 and section 2 of article 2 of the constitution of Illinois and the fourteenth amendment to the constitution of the United States.

Section 7 of the act creating the Chicago Park District (Ill. State Bar Stat. 1935, chap. 105, par. 574,) vested in its commissioners the power to establish by ordinance all needful rules and regulations for the government and protection of parks, boulevards and driveways, as well as the power to exclude all objectionable travel and traffic; to make and enforce reasonable traffic and other regulations, and to provide penalties for the violations of such rules and regulations. The vesting of power by the legislature in a municipality to regulate traffic so as to safeguard both life and property is everywhere recognized as being within the province of the legislature. The power here given to the Chicago Park District is no different from that granted to cities and villages within this State. Moreover, it is within the legislative domain to empower municipalities to preserve their boulevards and parkways as pleasure driveways. The annoyance and dangers incident to certain kinds of traffic are so well known that they involve the public

welfare, and the State may empower municipalities to designate what type of motor vehicles may be operated over certain streets. In fact, vehicular traffic may be entirely suspended if the situation surrounding the thoroughfare warrants it. While, generally, a person has a right to the use of a street, that right may be circumscribed by reasonable regulations, and no one has an inherent right to use a street as a place of business where he may operate a taxicab or a motor bus for hire. The presence of taxicabs in congested streets of large cities increases the possibility of accidents, and, consequently, of personal injuries. (*Weksler* v. *Collins,* 317 Ill. 132.) We held in *People* v. *Thompson,* 341 Ill. 166, that where one seeks a special or extraordinary use of the streets or public highways for his private gain, as by the operation of an omnibus, truck, motor bus or the like, the State may regulate such use of the vehicle thereon or may even prohibit it. The power to regulate and prohibit in such cases is beyond question, and that power was expressly conferred upon the park district as to its thoroughfares by the statute above referred to.

Appellants insist that the word "solicit," as used in the ordinance, should be therein defined, and that the acts which would constitute soliciting should be set forth with such certainty that the average man, exercising due care, will know whether or not he will incur a penalty for his actions. The error in appellants' contention arises from the assumption that the term "solicit" is not sufficiently definitive. This court has already had occasion to consider the term in *People* v. *Murray,* 307 Ill. 349. It was there held that the word "solicit" not only means to importune, entreat and implore, but that solicitation is not necessarily by word of mouth or writing. It may be by action which can be construed into a request, and that it requires no particular degree of importunity, entreaty, imploration or supplication. In that case Murray was indicted upon a charge that he solicited an employee in the classified civil service

of Chicago to make a contribution of money for political purposes. No open request was made for the contribution, but the circumstances shown were held to be equivalent to a solicitation. A conviction of the defendant was sustained.

The case of *People* v. *Belcastro,* 356 Ill. 144, relied on by appellants, is not in point. It was there held that a statute which provided that persons who are reputed to be habitual violators of criminal laws shall be declared to be vagabonds was invalid because the word "reputed" had a definite signification; that it meant "opinion, estimation or judgment," and that criminality cannot be made dependent upon the opinion of individuals.

In *Boshuizen* v. *Thompson & Taylor Co.* 360 Ill. 160, we held section 1 of the Occupational Diseases act void because it did not prescribe with any degree of definiteness the kind of devices, means or methods which should be furnished by the employer for the prevention of occupational diseases. But the general rule is clearly stated in the opinion that a law is not void if the words employed have a meaning sufficiently known and understandable to enable compliance therewith. It ought not be seriously contended that a person of average intelligence would not fully understand what is meant by language which inhibits an operator of a public vehicle from soliciting passengers for hire within the park system. The meaning of the ordinance is clear and explicit. The word "solicit" is so commonly understood that it needs no words to characterize an act which would constitute a violation of the ordinance. In *People* v. *Hassil,* 341 Ill. 286, the validity of the statute was challenged for uncertainty because of the words "without lawful consideration." It was claimed that this phrase was not sufficiently defined, and this court said, (quoting from *Baltimore and Ohio Railroad Co.* v. *Interstate Commerce Com.* 221 U. S. 612): " 'This argument, in substance, denies to the legislature the power to use a generic description, and if pressed to its logical conclusion, would

practically nullify the legislative authority by making it essential that legislation should define without the use of generic terms, all the specific instances to be brought within it.' It is a sufficient answer to say that the words in question have a settled meaning in the law and an unmistakable significance in the connection in which they are employed."

The Chicago Park District is a separate and distinct municipal corporation and exists in the same territorial jurisdiction as the city of Chicago. As such a corporation it has all the powers vested in it by the legislature, but the *situs* of this offense is within the territorial jurisdiction of the city, and the municipal court of Chicago has criminal and quasi-criminal jurisdiction of cases which arise within the territorial limits of the Chicago Park District. A proceeding for the violation of an ordinance of the Chicago Park District is a case of the fifth class of the municipal court of Chicago. The statute creating the Chicago Park District did not establish any judicial tribunal for the trial of such cases. The structures of both the Municipal Court act and the Park District act indisputably indicate that trial of cases involving a violation of municipal ordinances shall be disposed of in the courts already existing for that purpose.

The complaint for injunction is mainly predicated upon a theory that the ordinances have been and are being enforced in a manner which discriminates against colored taxicab drivers and in favor of white taxicab drivers. It is alleged that there are five hundred colored taxicab drivers operating taxicabs on South Parkway from Twenty-third street to Sixty-fifth street, in Chicago, and five thousand white taxicab drivers operating within the same district without molestation; that appellants and others similarly situated operated their vehicles in a lawful manner, and "that they have a lawful right to solicit business in a lawful manner," and that the Chicago Park District has begun a course of conduct against the plaintiffs (appellants,) and

other colored persons, for the purpose of preventing them from lawfully carrying on their business; that the park district caused the arrest of colored chauffeurs and drivers for receiving, transporting and discharging passengers on said parkway but did not arrest any white driver who received, transported and discharged passengers thereon in the same manner and under similar conditions as passengers were received, transported and discharged by the plaintiffs and other colored taxicab drivers; that many arrests of colored people were made, thereby causing great expense to said drivers; that some of the drivers were convicted and others were discharged in the municipal court, where such prosecutions were pending, and that the prosecution of colored taxicab drivers is being made under the pretense of enforcing the ordinance, when in truth and in fact it is for the purpose of creating a monopoly of the taxicab business in favor of white taxicab drivers and to ruin the business of colored drivers.

Of course, if the ordinance is being violated by drivers generally, and the Chicago Park District is prosecuting colored drivers only and not attempting to prosecute white drivers who have committed a similar offense, this is a violation of both the State and the Federal constitutions. However, the pleadings do not state such a case. It is not alleged that the plaintiffs did not solicit passengers for hire nor that the white drivers did solicit passengers for hire. Paragraph 17 of the complaint alleges that two hundred fifty colored drivers "were illegally arrested as mentioned in paragraph 15 of this complaint * * * while the said colored taxicab drivers were doing nothing more than the acts set forth in paragraph 15 of this complaint." Reference to paragraph 15 of the complaint discloses that it is the claim of the plaintiffs that they have a lawful right to solicit business in a lawful manner, and that it was the purpose of the park district to prevent them from lawfully carrying on that business in such manner. We have already held that it was within the power of the park district to

prohibit by ordinance solicitation of passengers for hire, and inasmuch as the complaint in this case neither denies that the plaintiffs solicited passengers for hire nor avers that white drivers did solicit passengers for hire, the court properly found that there was no sufficient allegation of discrimination. The findings of the superior court of Cook county as to the insufficiency, generally, of the complaint were correct.

Our decision that the sections of the ordinance here involved are valid leaves for consideration only the question of guilt of the defendant in the Lattipee case. James Howard, a police officer, testified that he noticed defendant's car at the Southwest corner of Fifty-eighth street and South Park avenue. Lattipee backed around the corner and saw a woman who the police officers later learned was Armita Hill. Lattipee stopped his cab and she got into it. He drove north and at Fifty-seventh street pulled over to the curb and honked his horn without getting any signal from the people standing on the curbstone. He said something to a man and woman and they got into his cab. The police officer was not close enough to understand what was said. Lattipee then drove north. The cab stopped at Fifty-third street, where the last mentioned woman got out. The man got out at Forty-seventh street. Armita Hill got out at Forty-fourth street. At this place the police officers came alongside the cab and officer Howard talked with Miss Hill. She said that she did not know the other passengers and had not told the driver to pick them up. She said all of them had paid fare. Lattipee said he did not run on a meter and admitted that he had asked other passengers to ride for hire. The defendant testified that all the passengers hailed his cab and that he did not solicit any of them. While the defendant contradicted the police officer as to solicitation, nevertheless the surrounding circumstances seem to corroborate the testimony of the police officer. The cause was heard by the court, and we are not disposed to set aside its finding of fact.

The judgment of this court is that the order of the superior court of Cook county dismissing the complaint for injunction in No. 23426 is affirmed and the judgment of the municipal court of Chicago against Lattipee is also affirmed in No. 23377.

*Order of superior court affirmed.*
*Judgment of municipal court affirmed.*