(No. 24814.—

THE CHICAGO PARK DISTRICT, Appellant, *vs.* ARTHUR
CANFIELD, JR., Appellee.

*Opinion filed February 15, 1939.*

448

ORR, J., specially concurring.

JOHN O. REES, (PHILIP A. LOZOWICK, and J. LESTER MEE, of counsel,) for appellant.

WILLIAM T. PRIDMORE, (SEYMOUR LEWIS, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellee was charged in the municipal court of Chicago with violation of section 87 of chapter 8 of the general ordinance of the Chicago Park District prohibiting the driving, in the park system, of a vehicle upon which was displayed commercial advertising. He filed a motion to dismiss the proceeding, which was denied. On hearing, the court dismissed the charge against him on the ground that section 87 of chapter 8 of the general ordinance is invalid. The Chicago Park District has appealed directly to this court, the usual statutory certificate as to the question of the validity of the ordinance having been entered by the trial court.

The cause was heard on stipulation as to facts. Certain additional evidence was offered by appellant on its motion for new trial. The facts as stipulated are that appellee was, on January 29, 1938, operating a Ford business coupe as an employee of the A. J. Canfield Company, an Illinois corporation; that this corporation owns and operates twenty-five such automobiles, each of which is colored deep green

with a bright-red top. On both doors and rear panel of each is painted the insignia "Canfield Beverages." This insignia is two feet three inches in length and one foot four inches in height. It is superimposed on a splash or sunburst of light green and golden yellow. It is stipulated that the insignia is identifiable within a radius of 150 to 200 feet and visible for a distance of approximately 800 to 900 feet. Appellee was arrested as he was driving north along the Outer Drive, a public boulevard, also known as Lief Eriksen Drive, which boulevard lies within the confines of Burnham Park, a unit in the system of parks controlled and maintained by appellant, and constitutes a link in a system of boulevards or parkways which connects all the parks within the Chicago park system.

It is stipulated that the parks of the Chicago Park District were created and are maintained for the purpose of contributing to the health, welfare, recreation, culture and enjoyment of the general public. They consist of attractive squares, plazas, lagoons, fountains, playgrounds, stadia, museums and monuments. Section 87 of chapter 8 of the general ordinance of the park district, is as follows: "Section 87. Display of Advertising from a vehicle: (a) No person shall drive any vehicle in the Park System upon which there is displayed any commercial placard or advertisement of any kind."

On motion for a new trial, appellant called its traffic engineer. He stated as his opinion that since the enactment of section 87 of the general ordinance prohibiting the use of the parks and boulevards by vehicles carrying advertising, there has been a decrease in deaths due to traffic accidents. It was his opinion that advertising signs on automobiles distract attention from drivers, slow up traffic and increase traffic hazards, and that the safety and convenience of the public is properly served by the type of regulation adopted by the park board. He stated, on cross-examination, that about sixty-five per cent of all the traffic within

the city of Chicago passes over the boulevards within the park system. While his testimony does not seem clear on the point, we gather from it that he intended to state that deaths from automobile accidents on the streets under the jurisdiction of the city of Chicago, since the adoption of this ordinance, have not shown as much of a proportionate decrease as those on the boulevards of the park system. The trial court held that section 87 of chapter 8 of the general ordinance of the Chicago Park District is not within the police powers of the district delegated to it by the legislature, and is unconstitutional and void.

The issues argued here, concerning the validity of this ordinance, are: (1) Whether the ordinance comes within the powers delegated to the Chicago Park District by the General Assembly; (2) whether it constitutes a reasonable or is an arbitrary exercise of powers delegated to the Chicago Park District, and, (3) whether the display on appellee's car constitutes an advertisement within the meaning of the ordinance.

Appellant urges that the legislature has delegated plenary powers to it to regulate the use of parks and boulevards, including the power "to exclude all objectionable travel and traffic therefrom." Section 7 of the act creating the Chicago Park District, approved July 10, 1933, (Ill. Rev. Stat. 1937, chap. 105, par. 333.7,) vests in the Chicago Park District the powers incident to park organizations of that character, and provides that the powers then vested in various districts within the Chicago area should be thereafter exercised by the Chicago Park District. The district is given power to acquire, lay out, establish, construct and maintain parks, driveways and boulevards in such districts and to control, manage and govern them and the use thereof. The commissioners of the district are, by that section, given power to "establish by ordinance all needful rules and regulations for the government and protection of parks, boulevards, and driveways and other property under its juris-

diction; may exclude all objectionable travel and traffic and may make and enforce reasonable traffic and other regulations; and provide penalties not exceeding two hundred dollars for any one offense for the violation of such rules and regulations."

In *Chicago Park District* v. *Lattipee*, 364 Ill. 182, that section was construed as giving to the Chicago Park District the same powers as are given to cities and villages within the State, which may be empowered to preserve their boulevards and parkways as pleasure driveways, to designate the type of motor vehicle which may be operated over certain streets, or, in fact, suspend traffic entirely if the situation surrounding the thoroughfare warrants it. The issue in that case was whether an ordinance prohibiting the operator of public vehicles soliciting passengers in the park system was a valid ordinance. The case is not decisive of the issue here.

Power to regulate traffic, or to exclude it, is vested in the State, and may, by its General Assembly, be delegated as a part of its police power, where its exercise bears some relation to public health and safety and which makes for public welfare. The rule recognized in this State is that all uses of property or courses of conduct which are injurious to the health, comfort, safety, morals and welfare of society, may be prohibited under the sovereign power of the State, though the exercise of such power results in inconvenience or loss to individuals. The exercise of such power, however, must find basis in the doctrine of overruling necessity, or bear some substantial relation to the public good. (*State Bank and Trust Co.* v. *Village of Wilmette*, 358 Ill. 311; *Forbes* v. *Hubbard*, 348 id. 166; *People* v. *Kane*, 288 id. 235; *Town of Cortland* v. *Larson*, 273 id. 602; *Haskell* v. *Howard*, 269 id. 550.) Laws which impose a penalty upon an individual, or interfere with his personal liberty, cannot be sustained unless they find basis in public health, comfort, safety or welfare. An

arbitrary invasion of the personal rights of an individual citizen under the guise of police regulation is not countenanced. While the General Assembly may first determine when the necessity exists for the exercise of this power, such determination is not final or conclusive. What are the subjects of its exercise is a judicial question. *Ruhstrat* v. *People,* 185 Ill. 133; *Ritchie* v. *People,* 155 id. 98.

The issue here presented falls under two principal heads: May appellant exclude vehicular advertising from the parks, and, may such advertising be excluded from the boulevards connecting the public parks, which boulevards are under the jurisdiction of the Chicago Park District? Much of appellee's argument is devoted to the latter phase of this question. He insists that sixty-five per cent of the travel of the city goes over these connecting boulevards, and that it is not a proper regulation to keep automobiles, bearing advertising signs or placards from traveling over them. While this question is one of grave doubt because of the fact that these connecting boulevards are, after all, public highways, and do not bear exactly the same relation to the park purposes as the boulevards lying within the public parks, it is stipulated, in this case, that appellee was arrested on a boulevard within the confines of Burnham Park. So, however interesting that question may be, and however serious the doubt as to its solution, it does not afford a basis for profitable discussion here, since it has no application to appellee. It has long been the rule that this court will not determine the constitutionality of the provisions of an act which do not affect the parties to the cause under consideration, or where the party urging the invalidity of such provisions is not in any way aggrieved by their operation. (*People* v. *Diekmann,* 285 Ill. 97; *People* v. *Huff,* 249 id. 164.) As appellee's arrest took place within the confines of the park, the determinative question here is whether appellant had authority to prevent vehicular advertising on the boulevards within the confines of the park, and since appellee cannot

be said to be interested in the question whether the ordinance as applied to boulevards outside the parks is valid, the discussion in this opinion will be confined to power to prevent vehicular advertising on the boulevards within the confines of the parks.

First, is commercial advertising on vehicles in public parks, a right of the advertiser? Public streets are for public travel. Such is their primary use. Unreasonable restriction of public travel, not based on safety or public welfare, cannot be sanctioned. Public parks, and the roadways therein, stand upon a somewhat different footing. The public are paying for their establishment and maintenance, not primarily as means of travel but for the purpose of establishing places for recreation in surroundings pleasant to look upon. A householder who has spent his day in the office, store or factory, does not take his family to the railroad or industrial yards for a picnic lunch or to rest his eyes on pleasant scenes, but shuns such places. He chooses a park, for there the family may enjoy rest, beauty and quiet, or games and exercises if they choose. It is now recognized that in large cities where great multitudes of people live, and commercial pursuits find it necessary to combine into a comparatively small space much of dust and strain and noise, and to erect on land so used many large grim-walled buildings, the wear of business and industrial pursuits takes a large toll in health and life and clean enjoyment. It indubitably follows that to secure surcease from those strains, and a chance to develop or gratify a love of natural beauty, it is a proper function of government to provide places in such a community where commercialism, unpleasant noises and scenes are eliminated. Experience has shown that public parks have not only contributed to public welfare, generally, but have specifically and directly restored and improved the public health. It is generally well known that the natural beauty, quiet and opportunities for exercise and amusement to be found in the public parks, away from busi-

ness and the noise and bustle of industry and trade, have been the tonic to better health and an inspiration to better living. Certainly these things are not only worth while but are important.

What right, then, of those wishing to further the commercial pursuits by advertising, has been taken away by preventing the display of advertising in the public parks? Surely they cannot say that their desired activities tend to promote the purposes of parks. Individuals in great numbers choose the parks for their leisure time for at least a different purpose, if not to get away from commercial activities. Must such activities nevertheless be forced upon them whether they will or no? If it is the right of the commercial-minded so to do, yes; if, on the other hand, it is the right of the public at such times and places to be freed therefrom, then such right to advertise does not exist. We are of the opinion that those seeking to enjoy the parks free from commercialism, rather than those who wish to advertise in them, hold the superior right.

The recent decisions of courts of the country have shown a definite recognition of a right of the public, who pay for the parks, to have their uses so regulated as to lessen the danger of accidents and heighten the pleasure, comfort and cultural appreciation in their use. In *Fifth Avenue Coach Co.* v. *City of New York,* 221 U. S. 467, 55 L. ed. 815, an ordinance which excluded vehicular advertising from the streets was attacked. It was there pointed out that the unlimited display of commercial advertising on the streets of New York, and more particularly on Fifth avenue, had a tendency to produce congestion and interfere with the normal use of the thoroughfare. The ordinance was sustained.

In *General Outdoor Advertising Co.* v. *Department of Public Works,* 289 Mass. 149, 193 N. E. 799, the question involved was whether a department official was authorized to refuse a permit for the erection of a sign near a public road. The court pointed out that under legislative enact-

ments of that State, signs and billboards on private property within public view may be regulated and restricted. It was there said: "One permissible and reasonable ground for such regulation is that travellers may be free from annoyance. This is not a mere matter of banishing that which in appearance may be disagreeable to some. It is protection against intrusion by foisting the words and emblems of signs and billboards upon the mass of the public against their desire." To the argument that the rules and regulations of the department, so far as they related to the preservation of scenic beauty and the exercise of taste and fitness, are void because they rest upon aesthetic considerations, the court stated: "It has been decided quite generally, if not universally, by courts in which the question has been raised, that aesthetic considerations alone or as the main end do not afford sufficient foundation for imposing limitations upon the use of property under the police power. While property owners cannot be compelled in general to give up their rights for purely aesthetic objects, yet, if the primary and substantive purpose of the legislation is such as justifies the act, considerations of taste and beauty may enter in, as auxiliary. [Citing cases.]" It was also said of regulations there in force, "They do not rest primarily upon aesthetic considerations in the sense in which that phrase has been used to overturn legislative enactments. They are designed to promote safety of travel upon highways, and enjoyment of resort to public parks and reservations, to shield travellers upon highways from the unwelcome obstruction of business appeals, to protect property from depreciation, and to make the commonwealth attractive to visitors from other States and countries as well as to her own citizens. The rules and regulations are so phrased as to permit the exclusion of billboards and other advertising devices from territory whose scenic beauty would be especially harmed by their presence." It was also held in that case that the consideration of public safety justified the

regulation of billboards, and that travellers on the highway, attracted away from the driving of their cars, would be subjected to an increase in injuries.

In *Perlmutter* v. *Greene,* 259 N. Y. 327, 182 N. E. 5, the act of a public official screening from view plaintiff's sign, which had been erected on private property, was at issue. As a regulation of advertising on the ground of interference with traffic safety, his act was sustained as a proper exercise of police power.

As was said by this court in *Furlong* v. *South Park Comrs.* 320 Ill. 507: "Park purposes are not confined to a tract of land with trees, grass and seats, but mean a tract of land ornamented and improved as a place of resort for the public, for recreation and amusement of the public. The construction and maintenance of a building for museums, art galleries, botanical and zoölogical gardens, and many other purposes, for the public benefit, are recognized as legitimate purposes."

Vehicular advertising on the side and rear panels of a car, as in this case, does not contribute so much toward increasing the dangers of automobile traffic as do billboards, for the obvious reason that a driver of an automobile approaching such an advertising car does not see the sign, and even in following it, it is directly in front of him and does not, as the case of a billboard, have the effect of taking his eyes off the road. The purpose of such advertising is more to attract pedestrians, and it may well be said that in congested places, in parks or street crossings, such would have a tendency to increase the hazards of traffic. However, in the determination of the question whether this power may be exercised to exclude advertising vehicles from parks, there is the public right, such as is recognized in *General Outdoor Advertising Co.* v. *Department of Public Works, supra,* not alone to have the greatest safety to traffic in the roadways of the parks, but also a right to have places to which people resort for enjoyment and to gratify

their love of natural beauty, freed from the obtrusions of advertising signs. As we have seen, the individual advertiser has no right to foist his commercial business upon them at that time and place.

In the regulation and maintenance of parks, the consideration of the aesthetic plays a larger part than in most of those instances where the use of private property is sought to be subjected to the regulation of the police power. The aesthetic has not been and is not held to be a ground for sustaining zoning ordinances, which are designed to produce proper city planning and involve the structure, location and degree or intensity of use of privately owned structures. Parks are designed and maintained, in part at least, for aesthetic reasons. It is one thing to regulate the use of buildings privately owned, and another to regulate the use of property belonging to the public and created and maintained for the health and enjoyment of the public, to be derived from the use of that public property. So it is one thing to say how one shall exert his sole use of his own property and quite another to say how the individual may use public property maintained for a definite public purpose. It seems clear that the governing authorities may exclude any use of public property which is inimical to the purpose for which that property is maintained, where the purpose makes for the public welfare, and the fact that the purpose may, in part, be aesthetic, does not affect the power of regulation. We are of the opinion, therefore, that appellant, the Chicago Park District, has power to exclude such use of the boulevards within the confines of the park as mitigate against the full realization of the purposes of the park by the public using it, and that a regulation reasonably preventing vehicular advertising comes within that field.

Appellee says, however, that an unlimited discretion is given to the officers of the park district to say what is advertising and what is not advertising; to what they shall apply the exclusion and what will be exempted from it.

Appellant replies that advertising is a generic term of general common acceptance and that everyone knows what it means, and that it, therefore, needs no explanation by legislative pronouncement. It is true, advertising is a term of generally understood meaning. The ordinance prohibits the use of "any commercial placard or advertisement of any kind." The power given by the legislature under section 7 of the act creating this park district is to exclude "objectionable travel and traffic." Advertising is not traffic, so if advertising is to come within the power to exclude objectionable traffic, it must, in its nature, have some objectionable feature which contributes to making the travel of the vehicle bearing it, objectionable. To be thus objectionable, such advertising must have in it, or the fact of its existence, some element which contravenes the public purpose for which parks are created and maintained.

It is conceded that not all advertising tends to render the traffic by vehicles bearing it, objectionable traffic. Indeed, counsel for appellant, in this case, stated to the trial court that the insignia of manufacturers of automobiles and tires, or a small printed card on the side panels of a car door, would not come under the prohibition, yet they are as much advertising as is appellee's, though with its bright-red top and deep-green body, yellow sunburst and large lettering, the vehicle of appellee is indeed a vivid and colorful object. If appellant's position that the attention attracted by vehicular advertising constitutes an interruption of the right of the public to enjoy the park, or a danger to traffic, and so constitutes a valid ground for asserting here the use of the police power, the tendency to attract attention must appear as an element in any vehicular advertising to be legally prohibited under the power granted by the General Assembly. It is conceded that not all advertising contains this element. In fact, in the case of taxicabs the color of the vehicle often more definitely advertises not only that

it is in fact a taxicab, but its owner, than does the printed name on the side of it.

Counsel for appellant say that though this ordinance may be too wide in its application, and include, as prohibited, advertising which does not come within the purpose of the prohibition, yet that is not a matter of which this appellee can complain because there is no question about his vehicle being within the purposes of such regulation. Counsel cite those holdings of this court hereinbefore referred to pertaining to constitutional provisions not applicable to the party complaining against them. The parallel is not apt. In this instance the question is whether the act is complete, or whether it is left to the officers of the park district to determine whether a certain kind of advertising comes within or without the ordinance. There is here a question of power and the completeness of the act. We are of the opinion that because it, in terms, is made applicable to advertising that does not have in it any element contributing to objectionable travel or traffic and in nowise contributing to any interference with the primary purposes of parks, and so cannot be said to form a part of "objectionable travel and traffic," the act is not complete but leaves to the determination of the officers of the park district what advertising comes within it and what does not. No rules are laid down by which advertising which contributes to objectionable travel and traffic is to be determined. For this reason we hold section 78 of chapter 8 of the general ordinance of appellant Chicago Park District invalid. It follows that the judgment of the municipal court dismissing the charge against appellee and discharging him is right, and is affirmed.

*Judgment affirmed.*

Mr. JUSTICE ORR, specially concurring: I concur in this judgment and particularly with that part of the opinion contained in the last one and one-half pages thereof.