(No. 35548.—

THE CITY OF DECATUR, Appellee, *vs.* GEORGE CHASTEEN *et al.,* Appellants.

*Opinion filed March 31, 1960.*

FERGUSON & FERGUSON, of Decatur, for appellants.

BYRON M. MERRIS, Corporation Counsel, and CHARLES L. HUTHMACHER, City Attorney, both of Decatur, for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

Defendants George Chasteen, Gene Willis and Robert Bryson appealed directly to this court from separate judgments entered against them and in favor of plaintiff City of Decatur in the county court of Macon County. The actions, originally brought by the city in the court of a justice of the peace to collect penalties for an alleged violation of an ordinance, were decided in favor of defendants and plaintiff perfected appeals to the county court. Defendants there filed lengthy motions to dismiss each case, alleging certain facts concerning the business in which they were engaged and challenging the constitutionality of the ordinance.

The trial court denied the motions to dismiss, allowed plaintiff's motions for judgments on the pleadings and imposed a penalty against each defendant. Since the cases involve the same facts and issues of law, they were consolidated on this appeal. The trial judge certified that the

constitutionality of an ordinance is involved and that the public interest requires a review by this court. Therefore a direct appeal is authorized.

The facts are undisputed. The defendant Chasteen operated a business in the city of Decatur in connection with which motor vehicles owned by him were available for hire for the transportation of passengers. These vehicles operated without a fixed route or schedule and the business was conducted on a "call" basis at rates agreed upon when the customer telephoned for service. Defendants Willis and Bryson were employed as drivers by Chasteen and were engaged in the operation of vehicles owned by him in his business at the times involved in the complaints. No license had been applied for or obtained from the city by any of defendants for the operation of these vehicles, but defendant Chasteen had obtained livery-car license plates and registrations from the Secretary of State under the applicable statute and regulations promulgated by that office.

Chapter 70 of the municipal code of the city of Decatur prescribed certain rules, standards and regulations for the licensing and supervision of taxicabs and taxicab service. The ordinance defined a taxicab as "a vehicle for hire by passengers not having any fixed route or schedule" and provided that no taxicab shall be operated or driven on the streets without a license therefor, unless it conforms to the requirements of the chapter. Applications for a license were to be made in writing to the chief of police who was authorized to hold a public hearing, make findings in certain definite respects and file a report of his findings and recommendations with the city council, which shall consider the report, make such additional investigation as it deems advisable, and determine whether or not public convenience and necessity required the proposed service and whether or not the license shall be granted.

The ordinance specifically provided that: "Every taxicab operated on the streets of this City shall have affixed

thereto a taximeter, which has been inspected and found to be accurate, and that complies with the provisions hereof. It shall be unlawful for any person to own, operate or drive a taxicab in this City unless the fare to be charged is determined by an approved taximeter, and no other or different fare shall be charged to passengers than is recorded on the reading face of said taximeter for the trip, except as herein provided." The ordinance prescribed certain penalties for its violation.

Defendants do not deny their failure to comply with the ordinance. Rather, they urge that, as applied to their "livery business," the law is unconstitutional. In this connection they seek to draw a distinction between livery and taxicab service. They assert that livery service is operated on a call basis with fares fixed by agreement in advance, while taxi service indiscriminately carries all persons who offer themselves as passengers, either on a call or pick-up *en route* basis, uses cab stands and cruising operations and charges according to mileage by use of a taximeter. They argue that, by classifying as taxicabs all vehicles not having any fixed route or schedule which carry passengers for hire, the ordinance is arbitrary, confiscatory, prohibitory and unreasonable, and denies to defendants equal protection of the law and deprives them of their life, liberty and property without due process of law in violation of the applicable provisions of the State and Federal constitutions. Defendants also urge that the ordinance is special legislation within the prohibition of section 22 of article IV of the Illinois constitution.

Plaintiff city denies that there is any fundamental distinction between the alleged types of operation of such vehicles and contends that the city has the right to regulate vehicles carrying passengers for hire and to classify and regulate them as taxicabs when they do not operate on a fixed route or schedule regardless of the manner in which they may choose to accept calls for service and fix their charges. It

also asserts that the regulations of the ordinance are reasonable and necessary for the promotion of the comfort and general welfare of the citizens of the municipality.

Defendants do not dispute the power or authority of the city to pass ordinances regulating "the use of the streets" or to "license, tax and regulate hackmen * * * cabmen * * * and all others pursuing like occupations, * * *." (Ill. Rev. Stat. 1957, chap. 24, pars. 23—10, 23—51.) They concede that the State, in its legitimate exercise of the police power, has delegated the exercise of these functions, among others, to the various municipalities, subject to constitutional limitations. Thus, the question of power to legislate upon this subject is not involved in this appeal. Defendants do not deny the authority of the city to make reasonable regulations concerning their business. They object only to the classification and method adopted.

The due process clauses, limiting the exercise of the State's police power, prohibit only an arbitrary, unreasonable and improper use of such power. (*Father Basil's Lodge, Inc.* v. *City of Chicago,* 393 Ill. 246, 257.) One who challenges the validity of an ordinance as arbitrary and unreasonable must prove by clear and affirmative evidence that the ordinance constitutes arbitrary, capricious, and unreasonable municipal action; that there is no permissible interpretation which justifies its adoption, or that it will not promote the safety and general welfare of the public. *Petterson* v. *City of Naperville,* 9 Ill.2d 233, 247; *First Nat. Bank* v. *County of Lake,* 7 Ill.2d 213.

Where an ordinance is passed pursuant to a legislative grant of power, a presumption favoring its validity obtains. (*First Nat. Bank* v. *County of Lake,* 7 Ill.2d 213; *People ex rel. Keller* v. *Village of Oak Park,* 266 Ill. 365; *City of Chicago* v. *Washingtonian Home,* 289 Ill. 206.) The fact alone that the ordinance may operate to impose burdens or restrictions on the property which would not have existed without the enactment of the ordinance is not

determinative of the question of its validity. (*Miller Bros. Lumber Co.* v. *City of Chicago,* 414 Ill. 162.) The privilege of every citizen to use his property according to his own will is both a liberty and a property right, but these rights are always subordinate to the interests of the public welfare. *Father Basil's Lodge, Inc.* v. *City of Chicago,* 393 Ill. 246; *People* v. *Anderson,* 355 Ill. 289; *Durand* v. *Dyson,* 271 Ill. 382.

The foregoing principles apply to the case at bar. Defendants' assumption that they have a constitutionally protected right of property in connection with the use of the streets for business purposes is not supported by any case cited by them. We have repeatedly held that no one has any inherent right to use the streets or highways for business purposes. (*Jackie Cab Co.* v. *Chicago Park District,* 366 Ill. 474; *Chicago Park District* v. *Lattipee,* 364 Ill. 182; *People ex rel. Johns* v. *Thompson,* 341 Ill. 166.) "Where one seeks a special or extraordinary use of the streets or public highways for his private gain, as by the operation of an omnibus, truck, motorbus or the like, the State may regulate such use of the vehicle thereon or may even prohibit such use. *People ex rel. Johns* v. *Thompson,* 341 Ill. 166, 169.

The power to regulate and prohibit in such cases is beyond question, and the power to exclude includes, for the most part, the power to permit upon conditions. (*Chicago Park District* v. *Lattipee,* 364 Ill. 182, 185; *Weksler* v. *Collins,* 317 Ill. 132, 139.) Thus a city, under its right to regulate the use of the streets, may by ordinance limit or restrict the number of taxicabs which are to be operated though the effect may be to deny to certain individuals the use of the streets for that purpose. *Yellow Cab Co.* v. *City of Chicago,* 396 Ill. 388.

The ordinance in question does not deprive defendants of their liberty or property without due process of law. No inherent rights are involved and the ordinance permits

the operation of vehicles carrying passengers for hire without fixed route or schedule subject only to the conditions and restrictions imposed. These are reasonably calculated to secure the public welfare and have a direct relation to the object sought to be attained. It is in the public interest to secure uniformity in the charges to be made for public transportation and the use of meters on such vehicles is an appropriate method of securing the result.

An occupation or business which may be carried on only by permission will justify a degree of regulation not permissible in the case of an activity pursued as a matter of right. (*Weksler v. Collins,* 317 Ill. 132, 139.) Considering the nature of the business involved and the objects sought to be attained by the ordinance, the regulations are reasonable and proper and free of the constitutional objection here urged.

Defendants further contend that the ordinance constitutes an arbitrary and unreasonable classification and operates to deny them an equal protection of the laws; that their livery service is fundamentally different from taxicab service; that the ordinance should have recognized such fact and provided a separate classification for liveries; and that by placing all such vehicles in the category of taxicabs their constitutional rights have been violated. The defendants are not objecting to a separate classification of their business, as is usually the case, but rather protest the failure of the ordinance to classify it separately. They argue that the ordinance is unreasonable because it attempts to compress into one class all motor vehicles carrying passengers for hire other than on a fixed route or schedule.

The equality clause of the fourteenth amendment to the Federal constitution does not deprive a State of its power to pass laws for the protection of the public health, safety and morals and the promotion of the general welfare. The question of classification is primarily legislative and only becomes judicial when the legislative action is clearly un-

reasonable. (*Heartt* v. *Village of Downers Grove*, 278 Ill. 92, 96.) The State and its municipal corporations under their delegated powers may regulate the use of the streets and highways where no merely arbitrary discriminations are made. *Weksler* v. *Collins*, 317 Ill. 132, 138.

The ordinance in question designates as taxicabs all vehicles for hire by passengers not having any fixed route or schedule. It is of broad and general scope and applies to all persons similarily situated and operating businesses within the general classification. The fact that such vehicles are designated "taxicabs" is of no particular importance. The definition used in the ordinance is in accord with the pronouncement of this court in *Jackie Cab Company* v. *Chicago Park District*, 366 Ill. 474, 476: "The term 'taxicab' has come to have a well-defined meaning in the law. It differs from the jitney bus, street car or omnibus as a carrier in that it does not follow a well-defined route prescribed by ordinance. A taxicab has become known as a vehicle subject to contract by a person desiring a special trip from one point to another without reference to any prescribed legal route."

Such definition fits the admitted nature and scope of defendants' business. Had the word "livery" been used in the definition instead of "taxicab," the result would be the same. While defendants insist that they operate only on a "call" basis, they admit that "taxicabs" may also operate on that basis. Thus, the only foundation for a possible distinction between the operation of taxi and livery service is the method used in fixing fares and charges. The ordinance prescribes meters. Defendants prefer to establish their charges by a verbal contract upon call. However, the city, in the exercise of the police power, is justified in prescribing the use of meters to secure uniformity of transportation charges.

The fact that defendants may desire to conduct their business in a particular manner does not preclude the city

from restricting such operation by a proper exercise of the police power. There is no constitutional guarantee that an individual may carry on his business in a certain way when the public welfare requires regulation, even though such legislation may make compliance difficult in the estimation of the person whose business is thereby controlled. (*Memorial Gardens Ass'n* v. *Smith,* 16 Ill.2d 116.) The ordinance in question applies equally and uniformly to all persons similarly situated and its classification is reasonable and proper.

Defendants say that the ordinance constitutes special legislation within the prohibition of section 22 of article IV of the Illinois constitution. The defect which they seek to reach seems to have its limitation in the reasonableness of the ordinance. (*People ex rel. Johns* v. *Thompson,* 341 Ill. 166, 168.) The power of the legislature to enact laws regulating vehicles for hire and to vest authority in municipalities to do so is well recognized and such laws and ordinances are not included in the constitutional prohibition against passing local or special laws. (*Weksler* v. *Collins,* 317 Ill. 132, 141.) We do not find the police-regulation features of the ordinance unreasonable. It is also suggested that the ordinance creates or tends to create a monopoly, rendering it invalid. There is nothing in the record which indicates that defendants are precluded from qualifying for licenses under the ordinance or that they have attempted to do so and have been refused. Under the ordinance in question, the city has reserved the right to issue additional licenses, without the consent of any licensee, when public convenience and necessity demands. It has not surrendered the right to grant licenses to other applicants and the ordinance does not tend to create a monopoly. *Yellow Cab Co.* v. *City of Chicago,* 396 Ill. 388, 399; *Capitol Taxicab Co.* v. *Cermak,* 60 F.2d 608, (D.C., N.D., Ill., E.D.)

Defendants also contend that the ordinance is unenforce-

able against them because it contravenes State statutes and regulations. Pursuant to statute, the Secretary of State, in licensing motor vehicles, "may make special designations of certain alphabetical letters, or combinations of letters, or of colors, or combination of colors pertaining to registration plates issued to vehicles owned by governmental agencies, operated by taxi or livery businesses, operated in connection with mileage weight registrations, operated by a dealer, transporter, or manufacturer the Secretary of State may in his discretion deem necessary for the proper administration of this Act." Ill. Rev. Stat. 1957, chap. 95½, par. 3—610.

Under the authority of this section, the Secretary of State has promulgated certain regulations concerning the registration and licensing of "taxis" and "liveries." By these regulations the applicant must show "taxi" or "livery" as the style of body in the space provided in an application for a State license. Plates for both types of vehicles are to be identified by the prefix letter "O." A special series of plates is to be set aside for use in these classifications.

Under the regulations the word "taxi" applies to any motor vehicle operated along or upon any public street or highway in any corporate city, town or village for the carriage of passengers for hire indiscriminately accepting and discharging all such persons as may offer themselves for transportation; and the word "livery" applies to any motor vehicle operated in a like place or manner "on a call basis only, and not on a pickup en route." Rules and Regulations of the Office of Secretary of State relating to Certificate of Title and Registration of Motor Vehicles, secs. 30, 31.

This question was passed upon in *Chasteen* v. *City of Decatur*, 21 Ill. App. 2d 496, 501, where the court stated: "The fact that these regulations may in the matter of issuing license plates, provide for a discrepancy between taxis and vehicles operated as a livery, is not to be taken to

mean that the legislature has given a particular meaning to the words taxi or livery which a municipal authority must adopt in enacting an ordinance regulating the use of its streets. Our examination of the Motor Vehicle law fails to disclose any provision which requires that a municipality in legislating on the subject of licensing vehicles for hire by passengers not having a fixed route or schedule must distinguish between taxicabs and liveries. Accordingly we find no basis for the conclusion that the provisions of the Ordinance in question are in conflict with the Illinois Motor Vehicle law." We are in accord with this pronouncement of the Appellate Court.

The defendants' remaining contention relates to the propriety of entering judgments on the pleadings. They urge that the cases required trial *de novo* and that there are no pleadings in such an appeal. However, they elected to file a motion to dismiss, and there set forth all the facts upon which their denial of liability was based together with allegations challenging the validity of the ordinance in all the respects urged here. The facts alleged clearly showed a violation of the terms of the ordinance and the motion left only questions of law to be decided. There were no triable issues of fact and defendants were given a full and complete opportunity to present their legal defenses. By motion they asked the court to decide the cases on the basis of the legal issues presented. They cannot now complain of the court's action. An action to recover a penalty for the violation of a municipal ordinance, though quasi-criminal in character, is civil in form and is ordinarily termed a civil action and not a criminal prosecution. (*Village of Maywood* v. *Houston,* 10 Ill.2d 117.) Disposition of the case under the applicable provisions of the Civil Practice Act was proper.

The judgments of the county court of Macon County are affirmed.

*Judgments affirmed.*