ACE AMBULANCE & OXYGEN SERVICE CO. *et al.*, Appellants, *v.* ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.

Third District   No. 78-492

Opinion filed August 21, 1979.

Thomas M. Hayes and Daniel L. Johns, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellant Ace Ambulance & Oxygen Service Co.

David L. Thomas and Henry E. Mueller, both of Peoria, for appellant City of Peoria.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos, Special Assistant Attorney General and James E. Weging, Assistant Attorney General, of counsel), for appellee Illinois Commerce Commission.

James J. Elson, of Canton, and Routman & Lawley, of Springfield, for appellee Spoon River Ambulance, Inc.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The Illinois Commerce Commission issued a certificate of convenience and necessity to Spoon River Ambulance, Inc., to operate a transportation service for nonambulatory persons in the city of Peoria and the surrounding area. The certificate was affirmed by the Circuit Court of Peoria County, and the parties who intervened to object, Ace Ambulance & Oxygen Service Co.[1] and the city of Peoria, have perfected this appeal from the circuit court judgment.

---

[1] At the time the petition to intervene was filed, the intervenor's corporate name was "Ace Ambulance & Oxygen Service Co." and all the pleadings and documents in the record on appeal are so titled. Intervenor's name has since been changed to "Peoria Hospitals' Mobile Medical Services," but for the purpose of this opinion the name "Ace Ambulance" will be used.

On January 17, 1977, Spoon River petitioned to the Commission for authority to operate a "medi-car" service in the Peoria area to provide transportation for persons who are nonambulatory, invalid, and convalescent. The petition proposed to operate by individual appointment, rather than on a fixed route or time schedule, using van-type vehicles specially equipped to accommodate wheelchairs. The medi-cars would be radio-dispatched from a base in the city of Peoria. The service would operate from 8 a.m. to 6 p.m. six days each week, and would be designed for persons who are physically unable to use ordinary commercial transportation but do not require ambulance or other emergency service. The petition proposed to operate this service to transport passengers "to hospitals, doctor's offices and other locales for medical care."

The commission allowed the city of Peoria and Ace Ambulance to intervene in opposition to the petition. Both intervenors challenged the jurisdiction of the commission and in addition, Ace Ambulance claimed priority in the field. After the hearing was concluded the commission entered an order granting a certificate of convenience and necessity in the following form:

> "IT IS HEREBY CERTIFIED that public convenience and necessity require the operation and maintenance by Spoon River Ambulance, Inc. of the business of transporting non-ambulatory, invalid and convalescent persons requiring specialized equipment, between points and places within a 20 mile radius of Peoria, Illinois, and to and from said radius to all points in the State of Illinois, as a common carrier."

The order also provided that the certificate did not give Spoon River exclusive authority for the transportation service specified so as to preclude the certification of other operators and that Spoon River's certificate is subject to the commission's General Order No. 153, and to the filing of its tariff schedules.

The intervenors then appealed to the circuit court where the order was affirmed. This appeal followed.

Intervenors have mounted a vigorous attack upon the commission's finding that it has jurisdiction to certify and regulate the type of service offered by Spoon River. Before considering their arguments, we first note that the Illinois Commerce Commission has only that jurisdiction conferred upon it by the legislature, and it may not by its own act extend its jurisdiction. (*Illinois-Indiana Cable Television Association v. Illinois Commerce Com.* (1973), 55 Ill. 2d 205, 302 N.E.2d 334.) Section 8 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 8) grants the commission general supervisory power over all public utilities and section 10.3 defines the term "public utility" as follows:

" 'Public utility' means and includes every corporation, company, association, joint stock company or association, firm, partnership or individual * * * that owns, controls, operates or manages, within this State, directly or indirectly, for public use, any plant, equipment or property used or to be used for or in connection with, or owns or controls any franchise, license, permit or right to engage in:

a. the transportation of persons or property, except motor vehicles regulated by 'The Illinois Motor Carrier Property Act'; * * *.

'Public utility' does not include, however:
* * *

5. such public utilities which are engaged in the transportation of persons by motor bus to the extent that the transportation is conducted pursuant to a valid and subsisting contract with a political subdivision or a municipal corporation in this State * * *." Ill. Rev. Stat. 1977, ch. 111 2/3, par. 10.3.

Two other statutory definitions are relevant to this controversy. In section 10.4 of the Public Utilities Act, it is provided:

" 'Common carrier' includes all railroads, street railroads, express companies, private car lines, sleeping car companies, fast freight lines, steamboat lines and other common carriers by water, and every corporation, company, association, joint stock company or association, firm, partnership, or individual, their lessees, trustees, or receivers appointed by any court whatsoever, owning, operating or managing any such agency for public use in the transportation of persons or property within the State * * *." (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 10.4.)

Section 10.7 provides:

" 'Transportation of persons' includes any service in connection with the receipt, carriage and delivery of the person transported and his baggage, and all facilities used or necessary to be used in connection with the safety, comfort and convenience of the person transported." Ill. Rev. Stat. 1977, ch. 111 2/3, par. 10.7.

In the instant case, both the city of Peoria and Ace Ambulance contend that the nonscheduled, nonrouted transportation service which Spoon River seeks to provide does not come within the definition of "public utility" as interpreted by the courts in several cases where a taxi-cab service was held not to be within the jurisdiction of the commission. For example, in *People ex rel. Johns v. Thompson* (1930), 341 Ill. 166, 173 N.E. 137, the court observed that as a general rule, the taxicab business does not include operation of a conveyance over specified routes under a regular time schedule and thus, within the meaning of the Public Utilities

Act, "a taxicab is not ordinarily a public utility." (341 Ill. 166, 168.) In *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 166 N.E.2d 29, the court defined the term "taxicab" as a vehicle subject to contract by a person desiring a special trip from one point to another without reference to any prescribed route. Intervenors insist that the reverse is also true—that any vehicle operating on a call basis and transporting persons from one place to another without a fixed route or schedule is a "taxicab," and therefore not a public utility.

We fail to see why the term "taxicab" and the term "public utility" should be considered mutually exclusive. The general principles to be applied were set out in *Austin Bros. Transfer Co. v. Bloom* (1925), 316 Ill. 435, 437-38, 147 N.E. 387, where the court said:

> "Whether a given business or industry is a public utility depends upon the public character of the business or service rendered, which makes its regulation a matter of public consequence and concern because it affects the whole community. [Citation.] Private carriers, as ordinarily defined, are those who, without being engaged in such business as a public employment, undertake to deliver goods or passengers for hire or reward. A common carrier of passengers has been defined as one who undertakes for hire to carry all persons indifferently who may apply for passage so long as there is room and there is no legal excuse for refusal, and accordingly jitney bus proprietors, owners of stage coaches, hacks and omnibuses have generally been held to be common carriers. This is so because in their business they serve all the public alike who apply to them for carriage, so long as they have room, and they are held common carriers regardless of the fact whether they operate in cities or from town to town or from city to city, so long as they maintain their status as public carriers, carrying all who apply and refusing none unless they have no room or for some other legal reason may refuse. [Citation.] Property becomes clothed with a public interest when used in a manner to make it a public consequence and affects the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use and must submit to be controlled by the public for the common good to the extent of the interest he has thus created."

In *Austin*, the court went on to hold that a taxicab *was* being operated as a public utility where it was being driven between two municipalities indiscriminately accepting passengers for hire in competition with a motor bus company.

■■ Having considered the statutes and cases cited by the intervenors, we conclude that the commission does have jurisdiction to regulate medi-car

transportation services. Neither the language of the Public Utilities Act nor the cases interpreting the Act restrict the commission's jurisdiction to transportation companies that operate on a fixed route and schedule, and such a restriction would defeat the purpose of the Act. The service rendered here is of a public character, since the carrier undertakes to transport all members of the public who apply and who are in need of the special accommodations offered. The public interest lies in the need to prevent unfair competition with emergency ambulance services or taxi-cab operations, which could arise if Spoon River is not restricted to the proposed purposes, and also because of the necessity of maintaining efficient service at reasonable rates that avoid excessive profits at the expense of invalid persons.

One argument advanced by intervenors is that the commission itself has never considered this type of nonrouted, on-call service as a public utility because the commission's General Order No. 153 (second revised), which Spoon River must comply with, contains numerous references to routes to be followed. We note that the commission's order in this case requires compliance with "all applicable provisions" of the regulation. The fact that the regulation is broadly drawn to cover a variety of operations cannot, in any way we can perceive, be relevant to the question of jurisdiction. This argument contains another defect which is obvious from a perusal of the order appealed from, wherein the Commission recites that it assumed jurisdiction over this type of transportation service on April 30, 1975, in another case, while General Order No. 153 had an effective date of January 1, 1976. Thus, at the time the applicable regulation took effect, the commission was already certifying and regulating a medi-car service within Illinois.

The city of Peoria also contends that cities and other local governments are authorized to regulate this type of transportation service under the provisions of the Illinois Municipal Code which authorize regulation of ambulances (Ill. Rev. Stat. 1977, ch. 24, par. 11—5—7), and of "hackmen, draymen, omnibus drivers, carters, cabmen, porters, ex-pressmen, and all others pursuing like occupations" (par. 11—42—6). In *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 166 N.E.2d 29, the supreme court upheld a municipal ordinance regulating taxicab and livery businesses. (See also *City of Chicago v. Vokes* (1963), 28 Ill. 2d 475, 193 N.E.2d 40, *appeal dismissed* (1964), 377 U.S. 124, 12 L. Ed. 2d 174, 84 S. Ct. 1141.) However, none of the authorities cited by the city purport to recognize that cities have *exclusive* jurisdiction to regulate transportation businesses. Instead, the courts have recognized concurrent jurisdiction to regulate the use of city streets by public utilities. (*City of Peoria v. Peoria Transit Lines, Inc.* (1957). 11 Ill. 2d 520, 144 N.E.2d 609; *City of Geneseo v. Illinois Northern Utilities Co.* (1941), 378 Ill. 506, 39 N.E.2d 26.) The

Public Utilities Act expressly provides that the powers granted to cities to regulate or control their streets and highways are not limited by the Act. (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 85.) Accordingly, the recent ordinance enacted by the Peoria city council purporting to regulate the kind of transportation service proposed here is not rendered invalid by the commission's assertion of jurisdiction unless the ordinance is repugnant to or inconsistent with the statute.

Also claimed as error is the commission's failure to find that Ace Ambulance is entitled to priority as a pre-existing carrier in the field providing an identical service to that proposed by Spoon River. According to the record, Ace Ambulance has been the sole provider of emergency medical transportation in the city of Peoria since 1975 and for that purpose holds six ambulance licenses issued by the city. On November 4, 1976, Ace Ambulance began to furnish nonemergency transportation service for nonambulatory persons. Standing on its position that the commission lacks jurisdiction of this type of service, Ace did not apply to the commission for a certificate of convenience and necessity. In the course of this proceeding, Ace indicated that an application would be forthcoming should the commission be found to have jurisdiction.

It is of course axiomatic that one of the purposes of public utility legislation is to protect utilities from destructive competition by preserving the monopoly status of existing utilities. In furtherance of this policy, the commission has utilized the so-called "first in the field" doctrine which requires a finding that an existing utility was not rendering adequate and convenient service before a new company can be certified to serve the same public as an existing utility. (*E.g.*, *McMann v. Illinois Commerce Com.* (1967), 38 Ill. 2d 126, 230 N.E.2d 197; *West Suburban Transportation Co. v. Chicago & West Towns Ry. Co.* (1923), 309 Ill. 87, 140 N.E. 56.) The problem in the instant case is that Ace Ambulance began operating a medi-car service in 1976 without a certificate of public convenience and necessity from the commission even though the commission had asserted its jurisdiction over this type of service 18 months previously. The commission contends that an illegal and unauthorized operation has no right to claim protection under the "first in the field" doctrine, and we agree. Until such time as Ace (or its successor) establishes with the commission its status as a public utility, it has no basis for claiming priority as a pre-existing utility. To hold otherwise would mean that no applicant for a certificate of convenience and necessity could know in advance whether any potential competitors were lurking out in the field.

Ace Ambulance relies upon *Continental Air Transport Co. v. Illinois Commerce Com.* (1967), 38 Ill. 2d 563, 232 N.E.2d 728, where the court

ruled that priority in filing an application for a certificate of convenience and necessity did not reduce the preference to which a competitor was entitled as the existing carrier in the field. *Continental* differs from the case at bar because there the existing carrier had previously been authorized to provide transportation from O'Hare Airport to the Waukegan-Great Lakes area by an indirect route prior to its application for certification to provide direct service. The court found that the manifest weight of the evidence established that the existing carrier was first in the field even though another transit company filed its application for direct service first. There was no question of unauthorized service as there is here. Before a utility is entitled to claim the benefits of being a pioneer in the field, it must show that it made a substantial investment in the initial development of the business. (*Eagle Bus Lines, Inc. v. Illinois Commerce Com.* (1954), 3 Ill. 2d 66, 119 N.E.2d 915.) Ace Ambulance did not present evidence showing any investment in developing the business, or the location or extent of its operations. The record also shows that the service offered by Ace (and its successor) is limited to medical service, while Spoon River is not offering emergency medical services, but is offering transportation for any purpose. Therefore, Ace failed to meet its burden of proving that it was entitled to protection or preference as first in the field.

■■ Finally, Ace Ambulance contends that the decision of the commission was contrary to the manifest weight of the evidence. To support this argument, the evidence presented by Spoon River to establish the public need is attacked as not "reasonably researched or verified" and as "premised on surmise and conjecture." The commission stated in its order that the public need for a nonemergency transportation service was testified to by a representative of Graham Hospital in Canton and by a supervisor from the Illinois Department of Public Aid for the Peoria area. Additional evidence was offered by an official of Spoon River. Without attempting to discuss this evidence in detail, we are persuaded, after examining the record, that the findings of fact of the commission relating to the public convenience and necessity are supported by the evidence. Ace Ambulance also argues that Spoon River failed to establish that the service offered by Ace Ambulance was not adequate, but this contention is merely the "first in the field" argument in another guise.

For the reasons stated, we affirm the judgment of the Circuit Court of Peoria County.

Affirmed.

BARRY and SCOTT, JJ., concur.