PEOPLES ENERGY CORPORATION *et al.*, Plaintiffs-Appellees, v. THE ILLINOIS COMMERCE COMMISSION, Defendant-Appellant.

First District (3rd Division) No. 82—3039

Opinion filed April 16, 1986.

918

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos, Thomas J. Russell, and Steven G. Revethis, Special Assistant Attorneys General, of counsel), for appellant.

Gardner, Carton & Douglas, Simon & Spitalli, Joseph M. Wells, Paul E. Goldstein, Neil J. Maloney, Carolyn E. Ramm, Richard E. Terry, and James Hinchliff, all of Chicago (Thomas Campbell, Michael E. Barry, Raymond F. Simon, and Joseph A. Spitalli, of counsel), for appellees Peoples Energy Corporation, Natural Gas Pipeline Company of America, and MidCon Corporation.

Hopkins & Sutter, of Chicago (Michael M. Conway, William J. McKenna, Jr., and Albert C. Maule, of counsel), for appellees North Shore Gas Company and The Peoples Gas Light & Coke Company.

Neil F. Hartigan, Attorney General, of Springfield (Phillip Parenti and William G. Shepherd, of counsel), for intervenor People of the State of Illinois *ex rel.* Hartigan.

Stanley J. Garber, of Shea, Rogal & Associates, Ltd., of Chicago (Gerald W. Shea, Ira A. Rogal, and Robert Hutchison, of counsel), for intervenor City of Chicago.

Douglass W. Cassel, Jr., and Howard A. Learner, both of Chicago, for intervenor Business and Professional People for Public Interest.

Stepan H. Krieger and Randall D. Schmidt, both of Chicago, for intervenor South Austin Coalition Community Council.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Peoples Energy Corporation (Peoples Energy), Natural Gas Pipeline Company of America (Natural Gas) and MidCon Corporation (MidCon), brought this action for injunctive relief and a declaratory judgment against defendant, Illinois Commerce Commission (the Commission). Plaintiffs sought to have the Commission enjoined from asserting or exercising jurisdiction over plaintiffs in regard to the planned corporate reorganization of Peoples Energy, and they further sought a declaratory judgment that the Commission lacked jurisdiction over the planned reorganization. The Commission filed a separate action against plaintiffs as well as Peoples Gas Light and Coke Company (Peoples Gas Light) and North Shore Gas Company (North Shore) to enjoin the planned reorganization until the Commission had completed its investigation of the reorganization. The two actions were consolidated. Various organizations and government entities seeking to enjoin the reorganization were permitted to intervene as defendants and file counterclaims. The trial court granted plaintiffs the injunctive relief and declaratory judgment which they had sought, and denied the relief sought by the Commission and intervenors. The critical issue on appeal is whether the trial court correctly determined that the Commission lacked jurisdiction to intervene in Peoples Energy's activities because Peoples Energy is not a public utility. We affirm.

Peoples Energy is a holding company for various subsidiaries engaged in the transmission of natural gas, distribution of natural gas, oil and gas exploration, and other related aspects of the energy industry. On January 16, 1981, Peoples Energy publicly announced that it was studying the possibility of a corporate reorganization that would result in separating its two public utility subsidiaries, Peoples Gas Light and North Shore, from its other subsidiaries. In June 1981, Peoples Energy's board of directors approved the reorganization. Under the plan for reorganization, Peoples Energy would continue as the holding company for the two public utility subsidiaries. MidCon, a newly formed, wholly owned subsidiary of Peoples Energy, would become a separate holding company, owning the outstanding common stock of the other subsidiaries currently owned by Peoples Energy.

On July 22, 1981, the Commission entered a citation order requiring Peoples Energy, Peoples Gas Light, North Shore and Natural Gas to appear on August 5, 1981, and show cause why the divestiture was not subject to Commission jurisdiction, or, if it was, why the divestiture would be in the public interest. Plaintiffs presented the Commission with a motion to dismiss for lack of jurisdiction. The Commission considered the motion on August 19, but deferred ruling on it at that time.

The Commission scheduled a hearing for August 31.

On August 20, plaintiffs filed the present action against the Commission in the circuit court, seeking preliminary and permanent injunctive relief and a declaratory judgment prohibiting the Commission from interfering with the reorganization. To this same end, plaintiffs also filed an emergency motion for a temporary restraining order, which was granted. The Commission filed a motion to dismiss plaintiffs' complaint. It also sought, unsuccessfully, to remove the action to Federal court. See *Peoples Energy Corp. v. Illinois Commerce Com.* (N.D. Ill. 1981), 520 F. Supp. 1145.

The Commission's motion to dismiss was denied on September 9. Around this time, other parties were allowed to intervene as defendants and permitted to file counterclaims in which they, too, sought to enjoin the reorganization. The intervening defendants are South Austin Coalition Community Council (SACCC) (a not-for-profit community organization); Business and Professional People for the Public Interest (BPI) (a public interest law organization); People of Cook County *ex rel.* Richard M. Daley, State's Attorney of Cook County (Cook County); Governor's Office of Consumer Services (GOCS) (an agency of the State executive branch); People of the State of Illinois *ex rel.* Tyrone Fahner, Attorney General of Illinois (the State); and Mary Imelda Murtaugh (a shareholder of Peoples Energy).

Also during this period, the Commission filed a separate action in the circuit court seeking to enjoin Peoples Energy and its subsidiaries from taking any action to consummate the reorganization until the Commission could investigate the matter and give its approval. After the Commission and the State unsuccessfully sought to have implementation of the reorganization stayed and the temporary restraining order dissolved by filing emergency motions in the Illinois appellate and supreme courts, the trial court heard the parties' respective motions and cross-motions for preliminary injunction. On October 23, 1981, the court granted plaintiffs' motion for a preliminary injunction and denied the cross-motions of defendants.

By the time plaintiffs' motion for a preliminary injunction was granted, the stockholders of Peoples Energy had approved the reorganization plan. Although the reorganization was scheduled to take effect on September 30, 1981, it was temporarily postponed by Peoples Energy due to this litigation. Following the entry of the preliminary injunction, on November 4, 1981, Peoples Energy announced that it would proceed with the reorganization on November 30 if no appeal was taken from the order granting the preliminary injunction. When no appeal ensued, Peoples Energy proceeded with its reorganization on

the announced date.

In February 1982, defendants were permitted to file amended counterclaims due to changes caused by effectuation of the reorganization. The Commission sought a writ of *mandamus* under section 75 of the Public Utilities Act (the Act) to compel plaintiffs to comply with their statutory duties by seeking Commission approval of the reorganization. (Ill. Rev. Stat. 1981, ch. 111⅔, par. 79.) It also sought the imposition of penalties pursuant to sections 76 and 78 of the Act. (Ill. Rev. Stat. 1981, ch. 111⅔, pars. 80, 82.) The other defendants essentially sought to have the reorganization held void.

On April 27, 1982, the city of Chicago (the city) was granted leave to intervene, but with the express condition that it be bound by orders previously entered and evidence previously received. During July and August 1982, the trial court held extensive hearings on the consolidated cases. On November 19, 1982, the trial court granted plaintiffs' request for a permanent injunction and declaratory relief, ruling that the Commission lacked jurisdiction over the reorganization. The court enjoined the Commission from asserting or otherwise exercising jurisdiction over Peoples Energy, Natural Gas or MidCon for the purpose of inquiring into or otherwise interfering with the reorganization. The court denied all relief sought by the Commission and the intervenors.

█ The Act[1] provides for general supervision of all public utilities by the Commission. (Ill. Rev. Stat. 1981, ch. 111⅔, par. 8.) The Commission derives its power and authority solely from the statute creating it, and it may not, by its own acts, extend its jurisdiction. *Regional Transportation Authority v. Illinois Commerce Com.* (1983), 118 Ill. App. 3d 685, 694, 455 N.E.2d 172, 178; *Ace Ambulance & Oxygen Service Co. v. Illinois Commerce Com.* (1979), 75 Ill. App. 3d 17, 19, 393 N.E.2d 1322, 1325. Here, Commission jurisdiction must be found, if at all, in the Commission's power to regulate public utilities, which are defined in section 10.3 (Ill. Rev. Stat. 1981, ch. 111⅔, par. 10.3), or in the Commission's power to assert jurisdiction over affiliated interests having transactions with public utilities pursuant to sec-

---

[1]The act under which this action was brought was repealed pursuant to the Regulatory Agency Sunset Act. (See Ill. Rev. Stat. 1981, ch. 127, par. 1904.3(8), as amended by Pub. Act 82—953 and Pub. Act 84—242.) An amendatory act effective January 1, 1986, provides:

"This amendatory Act of 1985 shall not affect pending actions or proceedings, civil or criminal, in any court or other tribunal *** nor abate any causes of action arising thereunder, but the same may be instituted, prosecuted and defended with the same effect as though this amendatory Act had not been passed." Ill. Rev. Stat. 1985, ch. 111⅔, par. 4—402.

tion 8a (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 8a).

Section 10.3 of the Act defines a public utility as follows:

" 'Public utility' means and includes every corporation, company, association, joint stock company or association, firm, partnership or individual, their lessees, trustees, or receivers appointed by any court whatsoever that owns, controls, operates or manages, within this State, directly or indirectly, for public use, any plant, equipment or property used or to be used for or in connection with, or owns or controls any franchise, license, permit or right to engage in:

\* \* \*

c. the production, storage, transmission, sale, delivery or furnishing of heat, cold, light, power, electricity or water;

\* \* \*

e. the conveyance of oil or gas by pipe line." (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 10.3.)

Defendants focus on the "indirect control" language, and they contend that Peoples Energy is a public utility under the plain meaning of the statute as well as under judicial and administrative interpretations. According to defendants, Peoples Energy's status as a public utility is evidenced by Peoples Energy's stock ownership of Peoples Gas Light and North Shore, its shared common history and development with those subsidiaries, and its business control of those subsidiaries.

■ While section 10.3 of the Act broadly defines public utilities, we do not believe that the definition is so expansive that it encompasses a nonoperating holding company of a public utility such as Peoples Energy. Moreover, when the Act is viewed as a whole, it is clear that it seeks to regulate entities and individuals which actually operate and manage the property devoted to public use. (See J. Mueller, *Origin and Development of Public Utility Regulation in Illinois* (Ill. Ann. Stat., ch. 111²/₃, Commentary at IX, XV (Smith-Hurd 1966)); *Palmyra Telephone Co. v. Modesto Telephone Co.* (1929), 336 Ill. 158, 164, 167 N.E. 860, 862.) The Commission's past practice in regard to public utility holding companies supports this conclusion.

■ The dominant characteristic of a holding company is the ownership of securities by which it is possible to control or substantially influence the policies and management of one or more operating companies in a particular enterprise. (*North American Co. v. Securities & Exchange Com.* (1946), 327 U.S. 686, 701, 90 L. Ed. 945, 956, 66 S. Ct. 785, 794.) The general rule, however, is that holding companies and their subsidiaries are separate legal entities. (*Hughey v. Hoffman Rosner Corp.* (1982), 109 Ill. App. 3d 633, 638, 440 N.E.2d 1049, 1052.)

This separate corporate identity is not destroyed by the fact that the company, through it stock ownership, has power to control the subsidiary. See *Smith v. Illinois Bell Telephone Co.* (1930), 282 U.S. 133, 143-44, 75 L. Ed. 255, 260-61, 51 S. Ct. 65, 67.

Here, it is undisputed that Peoples Energy owned 100% of the stock of the operating utilities. Moreover, it is clear that Peoples Energy exercised substantial business control over the operating utilities. We agree with D. Leroy Sample, the certified public accountant who testified on defendants' behalf, that business control was exhibited by the presence of the following factors: 100% ownership of common stock; common directors and officers; parent board approval of certain capital expenditures; subsidiaries' periodic reporting of operating plans and budgets; adherence by the subsidiaries to administrative practices, such as personnel policies, advised by the parent; and a dividend payout level set by the parent. However, we do not believe that the section 10.3 requirement of indirect control of property devoted to public use is satisfied by these circumstances.

Although Sample testified regarding Peoples Energy's control of its subsidiaries, he explicitly stated that his testimony was related to control only in a general business sense. He categorically stated that he had never read the Illinois Public Utilities Act, that he was never given a definition of indirect control as that phrase is used in section 10.3, and that he was not testifying in order to give an opinion as to whether Peoples Energy was a public utility according to the statute. He also admitted that he did not inquire as to whether Peoples Gas Light's and North Shore's boards of directors acted independently of Peoples Energy.

Sample further testified that it was Peoples Energy's 100% ownership of stock that gave it the right to exert control over its subsidiaries. The Illinois Supreme Court, however, has concluded that majority stock ownership does not constitute control of public utility property as that term is used in section 10.3. (See *State Public Utilities Com. ex rel. Clow v. Romberg* (1916), 275 Ill. 432, 114 N.E. 191; see also *Smith v. Illinois Bell Telephone Co.* (1930), 282 U.S. 133, 75 L. Ed. 255, 51 S. Ct. 65.) In this regard, in *Peterson v. Chicago, Rock Island & Pacific R.R. Co.* (1907), 205 U.S. 364, 391, 51 L. Ed. 841, 852, 27 S. Ct. 513, 522, the Supreme Court recognized that the power to change management, a power inherent in majority stock ownership, is not equivalent to present control of corporate property.

The testimony concerning the day-to-day operations of North Shore and Peoples Gas Light establishes that it is the subsidiaries, themselves, and not Peoples Energy, that oversee the property related to

public utility service. Sample testified that there was nothing which showed that Peoples Energy was involved in the day to day operations of running North Shore or Peoples Gas Light. John Thomas, vice-president and director of the operating utilities prior to the reorganization, testified that operating decisions were always made by the operating companies, and these decisions were not controlled by Peoples Energy. Similarly, O.C. Davis, who served as president of Peoples Energy and then as chairman from 1977 until the time of the reorganization, testified that he could not recall Peoples Energy ever making any operating decisions for Peoples Gas Light that were of any significance. He further stated that Peoples Energy never ran the day-to-day operations of the operating utilities. Finally, he testified that Peoples Energy never owned any plant or equipment for public use.

Eugene A. Tracy, president of Peoples Gas Light and North Shore prior to the reorganization, gave further testimony regarding operating control of Peoples Gas Light and North Shore. He stated that as the chief executive officer for the operating utilities, he was responsible for making final decisions relating to operations, and that the operating utilities had complete discretion in determining their requirements in regard to serving their customers. He also stated that he made the ultimate decision as to the terms of any contract, and the contracts negotiated by the management of the operating utilities did not require Peoples Energy's approval. In addition, Tracy identified other areas which the operating utilities controlled independently of the parent company, including decisions relating to storage, the purchase and sale of real and personal property, and management of Peoples Gas Light's SNG plant.

We believe that the record satisfactorily establishes that Peoples Energy did not have the type of indirect control over the operating utilities which extended to plants, property or equipment devoted to public use as required by section 10.3. Thus, we conclude that Peoples Energy is not a public utility.

The history of the Act and the enactment of section 8a of the Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 8a) support our conclusion that the legislature did not intend holding companies such as Peoples Energy to be considered public utilities, but rather, the legislature intended to treat them as affiliated interests. As the trial court here found, following abuses by public utilities during the 1920s, the legislature enacted section 8a in 1933 to reach the principal transactions of public utilities and their affiliated interests. Section 8a has four subparts. Subpart (1) gives the Commission jurisdiction to determine the identity of any holder of 1% or more of the voting capital stock of a public

utility. (Ill. Rev. Stat. 1981, ch. 111⅔, par. 8a(1).) Subpart (2) gives the Commission jurisdiction over

"affiliated interests having transactions, other than ownership of stock and receipt of dividends thereon, with public utilities *** to the extent of access to all accounts and records of such affiliated interests relating to such transactions, including access to accounts and records of joint or general expenses, any portion or which may be applicable to such transactions; and to the extent of authority to require such reports with respect to such transactions to be submitted by such affiliated interests, as the Commission may prescribe. For the purpose of this Section, the phrase 'affiliated interests' means:

(a) Every corporation and person owning or holding, directly or indirectly, 10% or more of the voting capital stock of such public utility

* * *

(f) Every corporation which has one or more elective officers or one or more directors in common with such public utility;

(g) Every corporation or person which the Commission may determine as a matter of fact after investigation and hearing is actually exercising any substantial influence over the policies and actions of such public utility even though such influence is not based upon stock holding, stockholders, directors or officers to the extent specified in this Section;

(h) Every person or corporation who or which the Commission may determine as a matter of fact after investigation and hearing is actually exercising such substantial influence over the policies and actions of such public utility in conjunction with one or more other corporations or persons with which or whom they are related by ownership or blood relationship or by action in concert that together they are affiliated with such public utility within the meaning of this Section even though no one of them alone is so affiliated.

No such person or corporation is affiliated within the meaning of this Section, however, if such person or corporation is otherwise subject to the jurisdiction of the Commission or such person or corporation has not had transactions or dealings other than the holding of stock and the receipt of dividends thereon with such public utility during the 2 year period next preceding." (Ill. Rev. Stat. 1981, ch. 111⅔, par. 8a(2).)

Subpart (3) of section 8a requires utilities to submit to the Commission for prior approval any "management, construction, engineering, supply, financial or similar contract," and any "contract or arrangement for the purchase, sale, lease or exchange of any property or for the furnishing of any service, property or thing" made between a public utility and an affiliated interest. (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 8a(3).) In subpart (4), the Commission is given authority to adopt general rules waiving the prior approval required in paragraph (3) for specified types of arrangements. (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 8a(4).) Section 8a thus supplements the Commission's regulatory authority over public utilities.

While there do not appear to be any direct references to holding companies in the legislative history, we agree with plaintiffs that the Governor's message to the General Assembly on June 6, 1933, shows that section 8a relates to holding companies and for the first time made them subject to Commission jurisdiction as affiliated interests. In explaining section 8a, the Governor stated:

> "Section 8a. In House Bill 845 is a copy of the existing New York law. It gives the Commission power to require the disclosure of holders of more than one percent of the capital stock of utilities; it defines what 'affiliate companies' are, gives the Commission jurisdiction over affiliated companies and holding companies in respect to the principal transactions between utilities and their affiliates." (Illinois House Journal 1344 (1933).)

Accordingly, while section 8a broadens the Commission's regulatory authority to encompass holding companies and other affiliated interests when they engage in transactions with public utilities, it does not give the Commission plenary authority over affiliated interests.

The Commission's prior treatment of Peoples Energy as an affiliated interest and not as a public utility is consistent with the conclusion that Peoples Energy is not a public utility. The evidence establishes that the Commission has always treated Peoples Energy as an affiliated interest, and it has never asserted jurisdiction over Peoples Energy on the basis that it is a public utility. This is true even though Peoples Energy did not substantially change in form from 1967 until the time of the reorganization, and even though the Commission had knowledge of Peoples Energy's stock ownership, common officers and directors, and other interrelationships between Peoples Energy and the operating utilities. Moreover, the Commission never required Peoples Energy to file the annual reports that other public utilities are required to file. The purpose of these reports is to supply the Commission with ongoing information regarding utilities' activities, operations,

certain transactions and financial health. Defendants' contention that the Commission did not seek annual reports from Peoples Energy because the Commission could obtain the information from other sources is simply untenable, especially since public utilities are required by law to file annual reports. See Ill. Rev. Stat. 1981, ch. 111²/₃, par. 19.

We recognize that the Commission is not bound by principles of *res judicata* (see *Mississippi River Fuel Corp. v. Illinois Commerce Com.* (1953), 1 Ill. 2d 509, 513, 116 N.E.2d 394, 396), and that its prior failure to treat Peoples Energy as a public utility, standing alone, would not be determinative of Peoples Energy's status. Nevertheless, for almost 14 years the Commission did not exercise jurisdiction over Peoples Energy on the grounds that it was a public utility, although it did exercise jurisdiction over Peoples Energy as an affiliated interest. Such a consistent and long-standing administrative practice cannot be overlooked in determining whether Peoples Energy is a public utility or an affiliated interest. (See *Mississippi River Fuel Corp. v. Illinois Commerce Com.* (1953), 1 Ill. 2d 509, 513-14, 116 N.E.2d 394, 397.) Moreover, the record shows that the Commission has never asserted that other holding companies such as AT&T and NICOR, which also had substantial involvement with public utility subsidiaries, were themselves public utilities. Just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it is equally significant in determining whether such power was actually conferred. *Federal Trade Com. v. Bunte Brothers, Inc.* (1941), 312 U.S. 349, 352, 85 L. Ed. 881, 884, 61 S. Ct. 580, 582.

Under the circumstances, we conclude that Peoples Energy is not a public utility as that term is defined in section 10.3. Since Peoples Energy is not a public utility, it was not subject to Commission jurisdiction in regard to the reorganization unless it was an affiliated interest under section 8a. Thus, we must examine whether the reorganization was a transaction involving a public utility.

The reorganization of Peoples Energy was effected pursuant to "An Agreement and Plan of Reorganization" which was executed solely by Peoples Energy and MidCon. It is undisputed that MidCon is not a public utility. There were no transactions relative to the reorganization which involved Peoples Gas Light or North Shore. No stock or any assets of the operating utilities were transferred. Therefore, the trial court properly determined that the Commission lacked jurisdiction over the reorganization because Peoples Energy is not a public utility and could not have been an affiliated interest in regard to the reorganization because the only other party involved, MidCon, is not itself a

public utility.

Next, we must determine whether the trial court properly determined that Natural Gas is not a public utility. Since section 29 of the Public Utilities Act requires that the transfer of the right to control any public utility be approved by the Commission (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 29), if Natural Gas is a public utility, then the transfer of its stock ownership from Peoples Energy to MidCon required Commission approval.

The record shows that Natural Gas is an interstate natural gas company which owns and operates facilities for the production, purchase, transmission, storage and sale of natural gas. It is a natural gas company under the Natural Gas Act (15 U.S.C. sec. 717 *et seq.* (1982)), and consequently, its facilities, wholesale rates and services are subject to regulation by the Federal Energy Regulatory Commission (FERC). Natural Gas does not sell gas to the public in Illinois with the exception of one retail customer, New Jersey Zinc Company. Natural Gas is not required to supply gas to all applicants, and it has previously denied service to certain applicants.

 The mere fact that the thing sold by a company is water or gas or electricity or telephone service, such as are ordinarily sold by public utility companies, does not of itself render the seller a public utility. (*Mississippi River Fuel Corp. v. Illinois Commerce Com.* (1953), 1 Ill. 2d 509, 516, 116 N.E.2d 394, 398.) In *Mississippi River Fuel Corp.*, the court stated:

" 'A public utility implies a public use of an article, product or service, carrying with it the duty of the producer or manufacturer, or one attempting to furnish the service to serve the public and treat all persons alike, without discrimination. *** When once determined to be a public utility under the statute the company must furnish all who apply, and the service it furnishes must be without discrimination and without delay.' " (1 Ill. 2d 509, 516, 116 N.E.2d 394, 398.)

Here, Natural Gas does not supply service to all who seek it, but rather, it has declined to supply service to certain applicants. Natural Gas has only one retail customer, and the record reflects that the Commission has previously held that Natural Gas is not a public utility by virtue of this one retail customer. In the past, the Commission has treated natural Gas as an affiliated interest, and there is no indication in the record that the Commission has ever required Natural Gas to comply with the filing requirements which are applicable to all public utilities. Finally, the sales and service provided by natural Gas to its public utility and municipal customers are rendered pursuant to service

agreements and rate schedules that are part of the tariffs approved by the FERC, and not all of Natural Gas' customers are treated alike. Accordingly, we conclude that Natural Gas is not a public utility under the Public Utilities Act, and therefore section 29 of the Act cannot serve to give the Commission jurisdiction over the reorganization.

Defendants next argue that the trial court erred in denying their motions to dismiss plaintiffs' action. Defendants contend that the doctrines of primary jurisdiction, exhaustion of administrative remedies, ripeness and other related doctrines dictate that the Commission first decide the issues raised here.

The doctrines of primary jurisdiction and exhaustion of administrative remedies are concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. The doctrine of exhaustion of administrative remedies applies where a claim is cognizable in the first instance by an administrative agency alone. Judicial interference is withheld until the administrative process has run its course. Primary jurisdiction, however, applies where a claim is originally cognizable in the courts. It is invoked whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. The judicial process is suspended pending referral of such issues to the administrative body for its views. *United States v. Western Pacific R.R. Co.* (1956), 352 U.S. 59, 63-64, 1 L. Ed. 2d 126, 132, 77 S. Ct. 161, 165.

■■■ Here, we conclude that the circuit court had jurisdiction to determine the issue of the public utility status of Peoples Energy. First, there is support for the proposition that the doctrines of exhaustion and primary jurisdiction do not technically involve jurisdiction, but rather, they relate to developing proper relations between the courts and administrative agencies. (See, *e.g., Stevens v. County of Lake* (1974), 24 Ill. App. 3d 51, 55, 320 N.E.2d 263, 267 (the question of exhaustion of administrative remedies does not go to the trial court's jurisdiction); *Weidberg v. American Airlines, Inc.* (N.D. Ill. 1972), 336 F. Supp. 407, 409 (primary jurisdiction is not technically a matter of jurisdiction but of judicial self-restraint).) Thus, a trial court's decision to stay the proceedings before the Commission or to invoke the doctrine of primary jurisdiction or exhaustion of remedies becomes a matter within the court's discretion. (See *Weidberg v. American Airlines, Inc.* (N.D. Ill. 1972), 336 F. Supp. 407, 409). Applying this standard to the case before us, we cannot say that the court abused its discretion. The trial court found that the present case concerned a mixed question of law and fact. The court stated that determination of the factual is-

sues involved did not require specialized agency expertise and that the issue of statutory construction was a task well within the court's competence. We agree.

Defendants rely heavily on the fact that plaintiffs had a former Commission chairman testify on their behalf and also sought the deposition of the then current chairman. Defendants further rely on the fact that plaintiffs sought Commission documents relating to the Commission's interpretation of section 10.3 of the Public Utilities Act. These facts, however, do not establish that the trial court lacked jurisdiction to hear the case. Moreover, while the testimony of the former chairman and the documents were evidence for consideration by the court, there was other substantial evidence presented and admitted for consideration. The defendants' arguments are plainly not tenable.

■■■ There are additional reasons why the doctrines of exhaustion of administrative remedies and primary jurisdiction are inapplicable here. Exhaustion is not required in certain situations, one of which occurs where a party alleges that the agency has no jurisdiction. When an attack is made on the authority of an administrative agency to act, the circuit court has jurisdiction to consider the merits of that claim regardless of whether administrative remedies were exhausted, and it may entertain a complaint for injunction in the case. (See *Sherman v. Board of Fire & Police Commissioners* (1982), 111 Ill. App. 3d 1001, 1006-07, 445 N.E.2d 1, 4.) In the present case, since there were sufficient allegations in plaintiffs' complaint to raise a genuine question as to the Commission's jurisdiction, exhaustion was not required.

■■■ Moreover, exhaustion is not required where remedies are judicial in nature, where the remedy is inadequate or futile, or where the litigant will be subjected to irreparable injury due to lengthy administrative procedures which fail to provide interim relief. (*Lasco v. Koch* (S.D. Ill. 1977), 428 F. Supp. 468, 471; see *Getto v. City of Chicago* (1979), 77 Ill. 2d 346, 356-57, 396 N.E.2d 544, 548-49; *General American Realty Co. v. Greene* (1982), 107 Ill. App. 3d 1011, 1014, 438 N.E.2d 540, 542.) Here, even if we were to assume that the Commission had the right to initially hear the matter, we would nevertheless be compelled to conclude that exhaustion was not required because plaintiffs would have been subjected to irreparable harm due to lengthy administrative procedures which failed to provide interim relief. The Commission did not institute proceedings until shortly before the reorganization was to take place. When plaintiffs made a motion to dismiss, rather than ruling on the motion, the Commission held the motion, ordered further hearings, and did nothing to expedite the hearing process. Plaintiffs then filed the present action in which they were granted

a preliminary injunction. Among the requirements, plaintiffs had to prove prior to the issuance of the preliminary injunction were that they would suffer irreparable injury without the protection of a preliminary injunction and that they would be likely to succeed on the merits. (See *Illinois Consolidated Telephone Co. v. Aircall Communications, Inc.* (1981), 101 Ill. App. 3d 767, 770, 428 N.E.2d 747, 750.) Defendants did not appeal the trial court's decision to grant the preliminary injunction. Subsequently, the trial court granted plaintiffs the permanent injunction at issue here. The court found that the Commission's continued interference with the reorganization would cause irreparable harm to plaintiffs. The court's finding in this regard is not against the manifest weight of the evidence, and it establishes that plaintiffs would have been subjected to irreparable harm due to lengthy administrative procedures which failed to provide interim relief.

██ For similar reasons, we do not believe that the doctrine of primary jurisdiction would bar circuit court jurisdiction here. No fixed formula exists for applying the doctrine of primary jurisdiction. In every case, the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. (*United States v. Western Pacific R.R. Co.* (1956), 352 U.S. 59, 64, 1 L. Ed. 2d 126, 132, 77 S. Ct. 161, 165.) Here, as we have previously stated, expertise peculiar to the Commission was not needed to properly resolve the problem. Moreover, the agency, itself, was before the court and was therefore able to acquaint the court with its position. The statutory scheme involved is not unduly technical, and the issues raised were no more difficult than those traditionally addressed by the courts. Neither is the need for agency uniformity a factor. Finally, this case does not involve a question of the reasonableness of an agency's actions, but the authority of the agency to act at all. (See *Interstate Commerce Com. v. All-American, Inc.* (7th Cir. 1974), 505 F.2d 1360.) We therefore conclude that the doctrines of primary jurisdiction and exhaustion of administrative remedies did not preclude the circuit court from hearing this matter.

██ We also reject defendants' contention that the ripeness doctrine precluded circuit court jurisdiction here. The basis for the ripeness doctrine as it relates to challenges to administrative action " 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " (*Bio-Medical*

*Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 546, 370 N.E.2d 223, 226, quoting *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148-49, 18 L. Ed. 2d 681, 691, 87 S. Ct. 1507, 1515.) Ripeness involves evaluation of the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. (*Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 149, 18 L. Ed. 2d 681, 691, 87 S. Ct. 1507, 1515.) In the present case, the issues were clearly defined, not abstract or hypothetical. Also, the court properly determined that the threat of harm from agency action was sufficient to obviate the need for application of the ripeness doctrine. While the Commission had already instituted a hearing and commenced proceedings, it had given no indication as to how long the proceedings would take. Yet, the date for the reorganization had already been set. Therefore, this action was sufficiently ripe for hearing in the circuit court.

Defendants next raise questions as to whether the public interest was adversely affected by the reorganization. Defendants do not contend that the reorganization is contrary to the public interest, but rather, they argue that the Commission should have had the opportunity to determine the effect of the reorganization on the public.

■■■ When an injunction is sought, the court has a duty to consider any injury or inconvenience which may result to the public if the injunction is granted. (*People ex rel. Voltz v. Metropolitan Disposal Co.* (1952), 345 Ill. App. 570, 579, 104 N.E.2d 107, 110-11.) Here, the trial court specifically considered the effect of the reorganization on the public. The court found that neither consumers nor the utilities themselves would be disserved by the reorganization. In particular, the court found that rates and quality of service would not be adversely affected. We believe that the court's findings are supported by the record, and defendants do not directly challenge these findings. We further believe that defendants have not demonstrated why the trial court was not capable of determining the effect on the public of issuing the injunction sought by plaintiffs. We therefore conclude that the trial court properly decided that the public interest would not be damaged by granting plaintiffs an injunction.

■■■ Next, we address the argument of BPI that plaintiffs are not entitled to relief because of the doctrine of clean hands that is applicable when a party seeks equitable relief. BPI points to Peoples Energy's "selection of the 'mirror image' form of divestiture as a means of avoiding the Commission's jurisdiction." Although we agree that the other business reasons asserted by Peoples Energy to explain the form of the reorganization appear to be secondary to Peoples Energy's desire to hasten the divestiture by avoiding Commission juris-

diction, we cannot say that the form of divestiture chosen by Peoples Energy is vitiated by the clean hands doctrine.[2] Peoples Energy was entitled to structure its reorganization in any legitimate manner it chose. Peoples Energy correctly states that it did only what was allowed by law and in accordance with its responsibilities to its shareholders. It had no obligation to choose the form of divestiture which would bring the transaction squarely within the Commission's jurisdiction. A party has the right to avail itself to the full of what the law permits. (See *Bullen v. State of Wisconsin* (1916), 240 U.S. 625, 630, 60 L. Ed. 830, 835, 36 S. Ct. 473, 474.) Therefore, BPI's argument lacks merit.

■■■ The city of Chicago argues that testimony and exhibits from the preliminary injunction hearing should not have been admitted at the hearing for a permanent injunction. We disagree. Prior to the trial on the merits, plaintiffs sought to adopt testimonial and documentary evidence that had been introduced at the preliminary injunction hearing. None of the parties that had participated in the preliminary injunction proceedings objected. As part of its order, the court conditioned the introduction of the direct testimony of certain plaintiffs' witnesses on the witnesses being made available for cross-examination.

The city was permitted to intervene in this action as a defendant-counterplaintiff on April 27, 1982, after the conclusion of the preliminary hearing proceedings. The city's intervention, however, was subject to various terms and conditions, including the express condition that the city be bound by all prior orders or judgments and by evidence previously received. The Code of Civil Procedure specifically au-

---

[2]In this regard, we point out that while the present case was pending in the circuit court, the county of Cook and the city of Chicago brought suit in Federal court against MidCon, Peoples Energy, and other corporate defendants, as well as their corporate officers and directors, and others. Plaintiffs there alleged that defendants had violated the Racketeer Influenced and Corrupt Organizations Act (RICO). Specifically, plaintiffs alleged that Peoples Gas Light and North Shore secured rate increases between 1977 and 1980 on the basis of intentional misrepresentations, then diverted the revenues by paying excessive dividends to Peoples Energy, which in turn invested the proceeds in nonutility subsidiaries. It was alleged that the scheme reached fruition with the 1981 reorganization.

While the Federal case was pending, the circuit court issued its decision in the present case. Thereafter, the district court granted defendants' motions to dismiss, based in part on grounds of collateral estoppel. The Circuit Court of Appeals for the Seventh Circuit affirmed, finding that Illinois principles of collateral estoppel barred relitigation of issues controlling in the RICO suit. *County of Cook v. MidCon Corp.* (7th Cir. 1985), 773 F.2d 892.

thorizes a court to order that an applicant "shall be bound by orders or judgments, theretofore entered or by evidence theretofore received ***." (Ill. Rev. Stat. 1981, ch. 110, par. 2—408(f).) In addition, we point out that the city was given the opportunity to cross-examine plaintiffs' witnesses. Also, the city makes no specific claims of actual prejudice. Under these circumstances, the city's challenge to the admission of evidence from the preliminary hearing is untenable.

■■■ We turn now to the Commission's action for *mandamus* and penalties. We conclude that the trial court properly dismissed the Commission's action for *mandamus* based on section 75 of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 79) and for penalties based on sections 76 and 78 of the Act (Ill. Rev. Stat. 1981, ch. 111²/₃, pars. 80, 82). Section 75 permits the Commission to bring an action for *mandamus* where a public utility has violated, or threatens to violate, the law or one of the Commission's rules or regulations. Since Peoples Energy, MidCon and Natural Gas are not public utilities, the *mandamus* action was properly dismissed.

The Commission's action for penalties is also without merit. Under section 76, penalties are assessed whenever any public utility or other corporation does not comply with the provisions of the Act or the orders, rules and regulations of the Commission made pursuant to the Act. Recovery of penalties is governed by section 78. Since the Commission's arguments in regard to penalties are predicated on the public utility status of Peoples Energy and Natural Gas, and the Commission failed to prove that these entities are public utilities, the trial court properly dismissed the action for penalties.

Regarding the counterclaims of the other defendants, they, too, were predicated on the status of Peoples Energy and Natural Gas as public utilities or as affiliated interests involved in a transaction with a public utility. Since the trial court properly determined that neither entity is a public utility under section 10.3 nor, in regard to the reorganization, an affiliated interest under section 8a, the court's judgment in favor of plaintiffs on defendants' counterclaims must be affirmed.

Accordingly, the judgment of the trial court is affirmed in all respects.

Affirmed.

McNAMARA and WHITE, JJ., concur.